**UNITED STATES of America**

v.

**Jerry PRUSAN and David Vives, Defendants.**

**No. S91 Cr. 471 (LBS).**

United States District Court, S.D. New York.

Dec. 13, 1991.

Otto G. Obermaier, U.S. Atty. for the Southern District of New York, New York City, Bruce G. Ohr, Asst. U.S. Atty., of counsel, for U.S.

Pope and Bergrin, Newark, N.J., Paul W. Bergrin, of counsel, for defendant Prusan.

Lawrence F. Ruggiero, New York City, for defendant Vives.

### OPINION

SAND, District Judge.

Defendants Jerry Prusan and David Vives have been charged with unlawfully transporting into New York, their place of residence, firearms they obtained outside the state. Defendant Prusan has also been charged with possession of a firearm silencer that was not registered or identified by a serial number, and with improper storage of low explosives. As part of an omnibus pretrial motion, defendants David Vives and Jerry Prusan move to dismiss all charges against them, on the ground that this indictment violates the Double Jeopardy Clause of the Fifth Amendment. For the reasons stated below, defendants' motion is granted as to Count One. Defendant Prusan's motion is denied as to Counts Two, Three and Four.

Defendants Vives and Prusan also move to dismiss the indictment on the ground that it was the product of their immunized discussions with law enforcement officials, and so violates their Fifth Amendment right against self-incrimination. The Court finds that an evidentiary hearing under *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is required to resolve this issue. All other requests made by the defendants as part of the omnibus motion are denied.

### THE DOUBLE JEOPARDY CLAIM

#### I. FACTS

From February 1991 to April 1991, special agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") conducted an investigation into suspected violations of federal firearms laws by David Vives, Jerry Prusan, and other individuals. *See* Affidavit of Special Agent Reinaldo Rodriguez in Support of Search Warrant, attached as Exhibit 1 to Affirmation of Bruce Ohr (hereinafter "Aff. of SA Rodriguez"). On April 1, 1991, ATF agents executed a search warrant of the home of Jerry Prusan in the Bronx, New York. *See* Affirmation of Daniel Kumor, attached as Exhibit 1 to Supplemental Affirmation of Bruce Ohr, ¶ 2. That search uncovered fifty-five firearms, a large quantity of ammunition, eight pounds of low explosives, and twenty-five cases of fireworks, as well as a firearm silencer. *Id.* at ¶¶ 2–3. Prusan and Vives were arrested at the scene of the search. *Id.* at ¶ 4.

On April 10, 1991, Prusan and Vives were indicted in the United States District Court for the District of Puerto Rico. Count One of the Indictment charged Prusan, Vives, and two other individuals with conspiring to ship firearms, ammunition and silencers in interstate commerce from New York to Puerto Rico in violation of 18 U.S.C. § 922(a)(1)(A) and § 924(a)(1)(D) from June 1989 until April 1, 1991. *See* Indictment, *United States v. Maria E. Sanchez, Jerry Prusan, David Vives a/k/a Papo, and Susanne Cintron a/k/a Susie*, 91 Cr. 157 (D.P.R. Apr. 10, 1991), attached as Exhibit 1 to Prusan's Brief in Support of Pretrial Motions (hereinafter "Puerto Rico Indictment"). Prusan and Vives were named in every other count of the twenty-three count Indictment, in which they were charged with several specific substantive violations of firearms laws § 922(a)(1)(A), § 922(a)(1)(B), § 922(a)(3), § 922(a)(5), § 922(e), and § 1715. *Id.* Defendants Prusan and Vives pled guilty to several counts of the Puerto Rico Indictment, including the conspiracy charge, and they were sentenced on September 10, 1991, and August 30, 1991, respectively.

On May 31, 1991, Prusan and Vives were indicted in the present action in the United States District Court for the Southern District of New York. Count One of this indictment charged both defendants with conspiring to transport into New York, the state in which they resided, firearms obtained outside the state in violation of 18 U.S.C. § 922(a)(3) from February 1991 until the filing of the Indictment. The Indictment also charged defendant Prusan with possessing a firearm silencer that was not registered or identified by a serial number,

and with improper storage of low explosives in violation of 26 U.S.C. § 5861(d), § 5861(i), and 18 U.S.C. § 842(j). On September 6, 1991, the Government filed a superseding Indictment, which changed Count One to charge the defendants with a substantive violation of § 922(a)(3), instead of a conspiracy to violate that section.

## II. DISCUSSION

■ Defendants Prusan and Vives argue that all charges in the present indictment must be dismissed against them because they constitute an improper subsequent prosecution in violation of the Double Jeopardy Clause of the Fifth Amendment.[1] The Double Jeopardy Clause provides three separate protections to defendants: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (citations omitted). Here defendants argue that double jeopardy bars this indictment against them because they have been convicted of the "same offense" in a previous prosecution.

### A. *The Double Jeopardy Standard*

### 1. *The Grady "Same Conduct" Test*

■ Traditional double jeopardy analysis focused on the statutory provisions at issue in both the initial and subsequent prosecutions. To determine whether the violation of two different provisions constituted two distinct offenses or only one, the court examined "whether each provision required proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). However, the Supreme Court's decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), "significantly altered the jurisprudential landscape of double jeopardy." *United States*

*v. Gambino*, 920 F.2d 1108, 1112 (2d Cir. 1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

In *Grady*, the Court concluded that the *Blockburger* test was simply "a guide to determining whether the legislature intended multiple punishments." *Grady*, 110 S.Ct. at 2091. However, the Double Jeopardy Clause was meant to address concerns beyond the possibility of enhanced punishment. Successive prosecutions subject a defendant to repeated ordeal and expense, denying him a sense of finality, and provide the Government with the opportunity to rehearse and perfect its case. *See id.* at 2091–92. *Blockburger*'s focus on technical statutory construction does not adequately protect defendants from these burdens. Therefore, the *Grady* Court enunciated a two-stage inquiry for evaluating whether a subsequent prosecution is barred by the Double Jeopardy Clause, in which the *Blockburger* test served only as the first step. *See id.* at 2093. If that test is satisfied, the court must move on to the second stage of the inquiry. Under *Grady*, a subsequent prosecution is prohibited under the Double Jeopardy Clause if "to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 2087.

### 2. *United States v. Calderone*

*Grady*'s "same conduct" standard thus broadens the scope of protection from multiple trials due to defendants under the Double Jeopardy Clause. However, the lower courts have had difficulty discerning the precise boundaries of the *Grady* standard, and the circuits have not applied uniformly the "same conduct" test. *Compare, e.g., United States v. Clark*, 928 F.2d 639 (4th Cir.1991) *with United States v. Felix*, 926 F.2d 1522 (10th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991).[2]

---

**1.** The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2.

**2.** In *Clark*, the same conduct which constituted substantive drug possession offenses for which the defendant was convicted in 1988 was alleged and proven as an overt act in a 1990 prosecu-

In *United States v. Calderone*, 917 F.2d 717, 721 (2d Cir.1990), *petition for cert. filed*, (Apr. 3, 1991) (No. 90–1527), the Second Circuit announced its understanding of the broad scope of the *Grady* standard. Rather than applying only to "single act" crimes, the *Grady* "same conduct" test "applies to all double jeopardy claims arising in the context of successive prosecutions." *Id.* at 721.

In *Calderone*, the defendants had first been granted a directed verdict based on insufficient evidence against them in a trial for a large multi-drug conspiracy. *Id.* at 718–719. The defendants were then indicted a second time for a narrower conspiracy to distribute heroin in New York, as well for use of the telephone to facilitate crimes and possession of heroin with intent to distribute. *Id.* at 719. The second conspiracy overlapped with the first one as to time period and some overt acts. *Id.* at 719, 721.

The majority held that the second prosecution for conspiracy was barred under the *Grady* "same conduct" test. *Id.* at 722.[3] The Court rejected the Government's argument that the conspiracy charge would not require proof of conduct that constitutes an offense for which the defendants had already been tried because the conduct at issue was the agreement itself rather than specific conduct from which an agreement can be inferred. *Id.* at 721. The *Calderone* Court instead found that agreement in nearly all conspiracy prosecutions is proven by evidence of conduct. *Id.* at 721. Expressing a concern with creative drafting by prosecutors, the court commented:

> Under *Grady*, this conduct may not be prosecuted a second time in order to establish an 'agreement' that differs from the first crime only in that the indictment happens to describe it differently.

*Id.* at 721; *see also Gambino*, 920 F.2d at 1112 (prosecution for drug conspiracy resting partially on overt acts for which defendant previously had been prosecuted barred under *Grady* and *Calderone* ).[4]

tion for conspiracy to possess the drugs. *United States v. Clark,* 928 F.2d 639, 641 (4th Cir.1991). The Fourth Circuit held that the Double Jeopardy Clause did not bar the 1990 prosecution because it is not necessary to allege or prove an overt act in a conspiracy charged under 21 U.S.C. § 846. *Id.* Therefore, the conduct for which the defendant had been convicted did not constitute an "essential element" of the conspiracy charge, and so survived the *Grady* test. *Id.* at 642.

The *Felix* case involved a similar set of circumstances in the Tenth Circuit. The defendant was convicted on a single count of attempt to manufacture a methamphetamine, and then subsequently prosecuted for conspiracy to manufacture, possess, and distribute the same drug, as well as for other substantive charges. *See Felix,* 926 F.2d at 1524, 1524 nn. 1–2. The Tenth Circuit held that the conspiracy conviction was barred by the prior prosecution based on the same conduct. *Id.* at 1530. The court explicitly addressed the issue of overt acts and their relationship to the "same conduct" test:

> [w]e are mindful that 21 U.S.C. § 846 does not require proof of an overt act in the prosecution of a drug conspiracy. That does not mean, however, that we should disregard the conduct represented by the overt acts pled in the instant Oklahoma indictment. The proof of such conduct ... tended to show the criminal agreement for the conspiracy charged.

*Id.* at 1529 n. 7.

The circuits have also split in applying the *Grady* test in the area of RICO. *Compare United States v. Pungitore,* 910 F.2d 1084, 1109 (3d Cir.1990), *cert. denied sub nom. Scarfo v. United States,* —— U.S. ——, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991) (declining to adopt *Grady* test in RICO context and limiting its application to "offenses arising from a single discrete event") *with United States v. Russo,* 906 F.2d 77 (2d Cir.1990) (finding prosecution of a predicate act following acquittal on RICO conspiracy charge barred under *Grady* test); *see also United States v. Gonzalez,* 921 F.2d 1530, 1537–39 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991); *Felix,* 926 F.2d at 1527, 1527 nn. 4–5. The Supreme Court's recent decision to grant certiorari in the *Felix* case provides an opportunity for the Court to clarify the parameters of the *Grady* test.

3. The difficulty that the circuits have had in applying *Grady* is evidenced by the *Calderone* decision, which is the product of a divided panel and resulted in three separate opinions. Judge Newman concurred in Judge Pratt's majority opinion, but wrote separately in order to explore what the *Grady* Court meant by the phrases "essential element" of the offense charged in the second prosecution, and "conduct that constitutes an offense for which the defendant has already been prosecuted." *See Calderone,* 917 F.2d at 722–23 (Newman, J., concurring).

4. The Second Circuit's position is thus similar to that enunciated by the Tenth Circuit in *United States v. Felix,* 926 F.2d at 1528; *see also* note 2

The *Calderone* Court also barred prosecution of the substantive telephone and heroin distribution counts on double jeopardy grounds. *See Calderone*, 917 F.2d at 722. The Court found that although defendants were not charged with these specific crimes in the prior prosecution, they were prosecuted for the conduct underlying these offenses. *Id.* Accordingly, under *Grady*, defendants could not again be prosecuted for this conduct, despite the fact that the charges were brought under separate statutory provisions. *Id.*

### 3. *Rejection of a "Same Evidence" or "Same Transaction" Standard*

Despite the difficulties the lower courts have had in interpreting the scope of the *Grady* "same conduct" test, the Supreme Court did make clear it was not a "same evidence" test. *See Grady*, 110 S.Ct. at 2093; *see also Calderone*, 917 F.2d at 724 (Newman, J., concurring). The Court explained that the presentation of particular evidence in one trial does not necessarily prevent the Government from offering the same evidence in a subsequent prosecution. However, conversely, the Government cannot avoid a double jeopardy bar by introducing different evidence to prove the same conduct. *See Grady*, 110 S.Ct. at 2093. "The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.*

■ The Court further stated that "same conduct" was not equivalent to "same transaction." *See id.* at 2094, 2094 n. 15. The Double Jeopardy Clause does not require that all charges against a defendant arising out of a single transaction be tried in a single proceeding. Therefore, the Government can proceed with charges in a second prosecution if it can establish the essential elements of those crimes without proving conduct for which the defendant was already prosecuted, even if the two prosecutions relate to the same criminal transaction. *Id.*

*supra.* The *Felix* Court explicitly acknowledged its agreement with the *Calderone* decision. *See*

### B. *Count One*

■ Defendants concede that the first part of the *Grady* standard, the traditional *Blockburger* test, has been satisfied because the violation of section 922(a)(3) alleged in the New York indictment requires proof of the importation of firearms into the state of residence, an element not required under the statutory violations alleged in the Puerto Rico Indictment. *See* Transcript of Oral Argument on Pre–Trial Motions in *United States v. Prusan and Vives*, 91 Crim. 471 (S.D.N.Y. Nov. 14, 1991), at 7 (hereinafter "Tr.").

Clearly the purchase of firearms outside New York is an essential element of the offense charged in Count One of the present indictment. The issue then for this Court under *Grady* is whether in order to establish this "essential element," the government "will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 110 S.Ct. at 2087.

A careful examination of the counts in the Puerto Rico Indictment reveals substantial duplication of the conduct to which the defendants pled guilty there and that alleged in the present indictment. Count One of the Puerto Rico Indictment, to which both defendants pled guilty, charged defendants with conspiring to ship firearms in interstate commerce from New York to Puerto Rico. Overt acts in furtherance of the conspiracy were alleged to have been committed in New York, Puerto Rico, and elsewhere. *See* Puerto Rico Indictment, Overt Acts ¶ 1.

The Indictment specifically alleged as an overt act that defendant Vives purchased a Davis Industries Model—380, caliber 380, serial number AD0923252 in Orlando, Florida on or about February 2, 1991, which ultimately was shipped to Puerto Rico on February 7, 1991. *See* Puerto Rico Indictment, Overt Acts ¶ 3. The Government concedes that, although it is not alleged expressly in the Puerto Rico Indictment, this firearm was in fact transported to

*Felix,* 926 F.2d at 1528.

New York prior to its shipment to Puerto Rico. Thus, as part of the same conduct proven in the previous prosecution, it should be barred from prosecution on the present case. *See* Memorandum of Law of the United States of America in Response to Defendants' Pretrial Motions, at 5 (hereinafter "Government Memorandum").

While no other overt acts specifically refer to the location of the purchase of the firearms, some do identify the shipment of specific firearms by serial number. *See* Puerto Rico Indictment, Overt Acts, ¶¶ 4, 26. Firearms Transaction Records of the Bureau of Alcohol, Tobacco, and Firearms, which identify all firearms purchased by serial number and location of purchase, demonstrate that several of these specific firearms were in fact purchased outside New York at two weapons stores in Orlando, Florida. *See* Federal Firearms Transfer Forms, attached as Exhibit D to Defendant Vives' Reply Memorandum in Support of Pretrial Motions (hereinafter "Federal Firearms Transfer Forms").

Count Three of the Puerto Rico Indictment, to which both defendants pled guilty, charged both defendants with the substantive violation of shipping four specifically identified firearms from New York to Puerto Rico. *See* Puerto Rico Indictment, at 8. At least three of these firearms are identified on the Firearm Transaction Records as having been obtained in Florida. *See* Federal Firearms Transfer Forms. Counts Nine and Nineteen, to which both defendants pled guilty, charged the defendants with further substantive violations involving the shipment of specific firearms from New York to Puerto Rico. *See* Puerto Rico Indictment, at 12–13, 20. Again, several of these firearms appear on the transfer forms as having been obtained in Florida.

These Firearms Transaction Records, which demonstrate that several of the firearms involved in the Puerto Rico Indictment were purchased outside New York, were provided to the defendants by the Government in the instant case. *See* Defendant Vives' Reply Memorandum in Support of Pretrial Motions, at 3 (hereinafter "Defendant Vives' Reply Memorandum").

It is not clear if these forms were in the possession of the prosecution in Puerto Rico. However, the prosecutor in the present case has conceded that the prosecutor in Puerto Rico was aware that the flow of at least several of the firearms moved from Florida to New York for reshipment to Puerto Rico. *See* Tr. at 17–18.

Other evidence substantiates that the Government was aware of this flow of firearms at the time of the filing of the Puerto Rico Indictment. The affidavit of an ATF special agent in support of a search warrant of Prusan's home, dated March 29, 1991, states that on February 8, 1991, the police in Puerto Rico were aware that a resident of Puerto Rico had received a package from New York, containing four firearms, including the Davis Industries pistol named in the Puerto Rico Indictment. *See* Aff. of SA Rodriguez ¶¶ 3–4. Agent Rodriguez states that on February 13, 1991, he conducted a trace of the pistol, and discovered that it had been purchased by Vives in Florida on February 2, 1991. *Id.* at ¶ 5. The post-arrest statement of Vives taken on April 1, 1991 describes three trips to Florida to purchase guns, the transport of the guns to New York, and their reshipment to Puerto Rico. *See* Post–Arrest Statement of David Vives, attached as Exhibit 3 to Affirmation of Bruce Ohr, at 1–2. Prusan's post-arrest statement, taken on April 1, 1991 by Special Agent Rodriguez, also describes Vives' purchase in Florida of firearms that were brought to New York and then shipped to Puerto Rico. *See* Post–Arrest Statement of Jerry Prusan, attached as Exhibit 2 to Affirmation of Bruce Ohr, at 2. Further, the Pre–Sentence Report on Vives prepared by the United States Probation Office in Puerto Rico also contained information on the ATF investigation that described Vives' gun purchases in Orlando. *See* Vives Pre–Sentence Report, attached as Exhibit E to Defendant Vives' Reply Memorandum, at 6–7.

The overt acts alleged in the conspiracy charge, as well as several of the substantive charges, make clear that the Puerto Rico prosecution encompassed a pattern of conduct, the trafficking of firearms, of which the purchase of weapons outside

New York and their transport into New York was a part. The overlap in the time frames of the charges in the Puerto Rico Indictment and Count One of the present indictment further demonstrates that the prior prosecution included the conduct charged in Count One of the instant case. Count One of the present indictment alleges that the offense occurred from on or about February 1 through April 1, 1991. *See* Superseding Indictment ¶ 1. The Puerto Rico Indictment alleges that the conspiracy existed from on or about June 1989 up until April 1, 1991, and the specific shipments alleged as overt acts, as well as several other substantive charges, occurred in February and March of 1991. *See* Puerto Rico Indictment.

The crimes alleged in the Puerto Rico Indictment and Count One of the present indictment are not merely part of the same transaction, as the Government argues, and therefore allowed under *Grady*. *See* Government Memorandum of Law at 5–6; Tr. at 17, 19–20. The Puerto Rico Indictment and Count One of the present indictment do not allege distinct crimes which happened to occur during the same transaction. The *Grady* Court rejected *Blockburger's* mechanistic analysis of statutory elements as an insufficient measure of double jeopardy concerns. The fact that the Puerto Rico Indictment and Count One of the present indictment invoke different statutory provisions does not make them distinct crimes for double jeopardy purposes. What is critical here is that in order to prove Count One, *i.e.*, trafficking in firearms, the Government is attempting to rely on the same conduct for which the defendants have already been prosecuted.

This case presents a situation similar to the one that existed in *Calderone*. Here, as in that case, the subsequent charge involves a smaller part of the conduct prosecuted in the first indictment. In *Calderone*, the second charge was for a conspiracy narrower in scope than the one alleged in the first indictment. *See Calderone*, 917 F.2d at 719. Count One of the original indictment in the present case also charged a conspiracy narrower in scope than the one charged in Puerto Rico. Among the overt acts alleged in the original indictment were several purchases of firearms by Vives in Florida and their transport to New York. The conspiracy alleged in the original indictment, to transport firearms into New York, thus covered one leg of the firearms' journey to Puerto Rico. The offense alleged clearly was within the conduct prosecuted in the conspiracy and substantive charges in the Puerto Rico Indictment, and would have been barred under *Grady* and *Calderone*.

Perhaps in an attempt to avoid the strictures of *Calderone*, the Government filed a superseding indictment, in which Count One changed from a conspiracy charge to the substantive charge of importing firearms from outside the state into New York between February 1 and April 1, 1991. *See* Superseding Indictment ¶ 1. No specific purchases or transfers of firearms are alleged. It is conceivable that the alleged offense involved conduct unrelated to that prosecuted in the Puerto Rico Indictment. If that were true, Count One would not be barred under the *Grady* test. *See Grady*, 110 S.Ct. at 2094.

However, there is overwhelming evidence that to establish an essential element of the offense alleged in Count One, the purchase of firearms outside New York, the Government will attempt to prove conduct that constitutes offenses for which the defendants have already been prosecuted. The overt acts alleged in the original New York Indictment, the Affidavit by Special Agent Rodriguez that was used to obtain the search warrant which led to the defendants' arrest, and the defendants' post-arrest statements all refer to conduct that relates to the conduct prosecuted in Puerto Rico. The Government's Memorandum of Law makes no reference to any unrelated conduct and implicitly acknowledges that the conduct involved in New York is related to the conduct with which the Puerto Rico prosecution was concerned.[5]

---

5. *See* Government Memorandum of Law, at 3:

[t]he Indictment filed in the District of Puerto Rico charges Prusan and Vives and other de-

The *Calderone* Court was particularly concerned that the power of prosecutors to draft indictments could be used to avoid the demands of the Double Jeopardy Clause, and found that a double jeopardy test could not depend on such drafting. *See Calderone*, 917 F.2d at 721–22. We cannot ignore the reasoning of *Grady* because the Government has drafted a vague indictment which makes it difficult to discern that the conduct used to prove the alleged offense constitutes a part of the conduct that has already been prosecuted. This concern is particularly acute where the occasion for the second prosecution is not because of some subsequent development (e.g., a victim dying) or the development of new evidence, but is rather a decision to prosecute again based on evidence known to the Government at the time of the initial prosecution.

Accordingly, we hold that Count One of the present indictment must be dismissed on double jeopardy grounds, under the standards enunciated in *Grady* and *Calderone*.

### C. *Counts Two, Three and Four*

■ Defendant Prusan also challenges the charges brought against him in Counts Two, Three and Four of the present indictment on double jeopardy grounds. Count Two alleges that from about 1983 and continuing until April 1, 1991, Prusan possessed an unregistered firearm silencer. Count Three alleges that the silencer was also not identified by a serial number. Count Four alleges that on or about April 1, 1991, defendant Prusan improperly stored low explosives. *See* Superseding Indictment ¶¶ 2–4.

Defendant Prusan argues that the silencer charges were contained within the conspiracy to ship firearms in interstate commerce charged in Count One of the Puerto Rico Indictment. *See* Prusan Brief in Support of Pre–Trial Motions, at 1 (hereinafter "Prusan Brief"). It is true that Count One

of the Puerto Rico Indictment does refer to the shipment of "firearms, ammunition and silencers." *See id.* at 1. However, there is no evidence linking the particular silencer found in Prusan's home to the conspiracy, and the timeframes of the two charges suggest that they are unrelated. Count One of the Puerto Rico Indictment alleges that this conspiracy occurred between June 1989 and April 1, 1991. Counts Two and Three allege possession of the silencer since 1983. In his post-arrest statement, Prusan says that the silencer was given to him by a co-worker sometime in 1983. *See* Prusan Post–Arrest Statement, at 3. It does not appear that the government will rely on conduct that constitutes an offense for which the defendant has already been prosecuted in order to establish an essential element of the silencer charges. Therefore, Counts Two and Three survive the *Grady* test.

■ Prusan also argues, however, that his possession of the silencer was mentioned in his presentence report and thus was considered by the sentencing judge in Puerto Rico. *See* Prusan Brief at 1–2. The presentence report does mention twice the seizure of the silencer, and includes it in the factors that may warrant an upward departure in Prusan's sentence. *See* Prusan Pre–Sentence Report, attached as Exhibit 3 to Prusan Brief, at 6, 16. However, this is not the basis for a double jeopardy claim. First, the sentencing judge did not in fact depart upward. *See* Prusan Brief at 2. Moreover, a sentence enhancement is distinct from a sentence and does not trigger double jeopardy concerns. *See United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 180–81 (2nd Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *see also United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989). For all of the above reasons, we hold that Counts Two and Three are not barred by the Double Jeopardy Clause.

fendants with the sending of firearms from New York to Puerto Rico, a separate crime ... [I]t does not even mention the conduct of the defendants in acquiring firearms in Flor-

ida and Maryland and transporting those firearms into New York, the gravamen of Count One of the New York indictment.

■ Prusan argues that Count Four of the present indictment, the improper storage of low explosives, "encompassed the same set of facts and allegations" contained in the Puerto Rico conspiracy charge and overt acts 20 and 28. *See* Prusan Brief at 2. This argument appears to be based on the defendant's confusion of low explosives with ammunition.

The Puerto Rico conspiracy charge and the cited overt acts do discuss ammunition but make no mention of explosives. *See* Puerto Rico Indictment at 1, 5, 7. Prusan's presentence report makes clear that these are distinct items. *See* Prusan Pre–Sentence Report at 6 ("[A]pproximately 15,000 rounds of different caliber ammunition ... were seized ... The New York City Police Department, Explosives Division, also removed approximately 20 boxes of Class D explosives ..."). There is no allegation concerning these explosives contained anywhere within the Puerto Rico Indictment. Prusan also argues that the explosives were considered by the sentencing Judge. *See* Prusan Brief at 2. For the reasons explained above, this does not invoke double jeopardy protection. Count Four does not allege conduct prosecuted in Puerto Rico, and is not barred on double jeopardy grounds.

We want to make clear that Counts Two, Three, and Four do not escape a double jeopardy bar because they are possessory rather than trafficking charges. In *Calderone*, the Court barred the charge of possession of heroin with intent to distribute as well as that of telephone use to facilitate narcotics crimes because the defendants had previously been tried under a conspiracy charge. *See Calderone*, 917 F.2d at 722. The Court commented that though the defendants "were not charged with these specific crimes in [the prior prosecution], they were nonetheless prosecuted for the *conduct* that supports these offenses." *Id.* (emphasis in original).

Thus, if the possessory charges concerning the silencer and explosives were related to the conspiracy or substantive charges in the Puerto Rico Indictment, they would be subject to dismissal on double jeopardy grounds. Here, however, the charges in Counts Two, Three and Four are not based upon conduct prosecuted in Puerto Rico, and so they survive the *Grady* test.

## THE KASTIGAR ISSUE

Defendants Prusan and Vives argue that the indictment must also be dismissed because their immunized discussions with law enforcement officials were used to obtain the indictment and will be used in the prosecution of that indictment. Under *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), the government may not use immunized testimony, or the evidence derived directly or indirectly therefrom in any prosecution of the witness. *See also Braswell v. United States*, 487 U.S. 99, 117, 108 S.Ct. 2284, 2294, 101 L.Ed.2d 98 (1988). When such an immunized witness is subsequently prosecuted, the government bears "the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461–62, 92 S.Ct. at 1665. We hold that it is necessary to hold a *Kastigar* hearing to determine the potential use of Prusan's immunized testimony in this case.

## CONCLUSION

For the above reasons, the motion of both defendants to dismiss the indictment on the double jeopardy ground is granted as to Count One, the only Count naming Vives. Defendant Prusan's motion to dismiss Counts Two, Three, and Four on this ground is hereby denied. We find that a *Kastigar* hearing is necessary to resolve the defendant Prusan's motion to dismiss the indictment because of use of immunized testimony. All other parts of the omnibus motion are hereby denied.

The Court seeks guidance from the parties as to the future progress of this prosecution, particularly in light of the grant of certiorari in *Felix*. *See* note 2 *supra*.

Accordingly we direct that the parties advise the Court in writing on or before January 6, 1992 whether they wish the

Court to set an early trial date or wish to proceed in some other fashion.

SO ORDERED.