UNITED STATES of America,
Plaintiff–Appellee,

v.

Johnny USELTON,
Defendant–Appellant.

No. 90–5387.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1990.

Decided March 13, 1991.

John W. Gill, Jr., U.S. Atty., Office of the U.S. Atty., Knoxville, Tenn., Curtis L. Collier, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Chattanooga, Tenn., for plaintiff-appellee.

Leonard Mike Caputo (argued), Phillips & Caputo, Chattanooga, Tenn., for defendant-appellant.

Before NELSON, Circuit Judge, WELLFORD *, Senior Circuit Judge, and MEREDITH **, District Judge.

WELLFORD, Circuit Judge.

Appellant Johnny Uselton, former sheriff of Marion County, Tennessee, was indicted for an alleged conspiracy to violate the Hobbs Act (Count One), and four substantive counts of attempted Hobbs Act violations in Counts Two through Five.[1]

The conspiracy count alleged that between November 1988 and July 1989, Uselton conspired with known and unknown persons to obtain for his personal use money from Ealion "B.B." Lance and an undercover FBI agent in exchange for allowing illegal cockfighting operations in his county. The conspiracy charge listed eighteen overt acts in furtherance of the alleged conspiracy. Ten of those overt acts concerned specific dates on which Uselton allegedly received money. The eight remaining overt acts involved defendant's alleged leasing of the cockfighting area, an initial meeting between Lance and Uselton in which Uselton allegedly demanded money, and several telephone conversations wherein Uselton allegedly arranged payoff times and meetings.

Four counts in the original indictment related to attempts to violate the Hobbs Act. These latter substantive counts alleged receipt of money by Uselton from the undercover FBI agent on four particular dates. For the purposes of this appeal, each one of the substantive counts alleges an act identical to one of the ten money-receiving acts listed by the grand jury in support of the conspiracy count.[2]

During the course of an eight-day trial, Uselton testified, admitting receipt of money on nine of the ten occasions alleged in the conspiracy count (including all four occasions alleged in the four substantive counts). He maintained, however, that he was actually conducting his own undercover investigation of Lance and the FBI agent, and was only pretending to be corrupt. The jury acquitted him on the conspiracy count, but could not agree on the four substantive counts, and therefore the trial court declared a mistrial as to those four counts.

The grand jury then returned a ten-count superseding indictment, and a second trial resulted in Uselton's conviction on all ten counts. He was sentenced to 51 months' imprisonment. Counts One through Four of the superseding indictment were simply reiterations of charges contained in Counts Two through Five of the original indictment. The remaining six counts of the superseding indictment charged substantive Hobbs Act violations (attempted extortion or extortion) based on money Uselton received from Lance ("the person known to the grand jury"). Each of these latter substantive counts corresponded to an overt act identified in conspiracy Count One of the original indictment (on which Uselton had been acquitted).

Uselton filed a motion to dismiss the superseding indictment, or in the alternative, to prohibit the government from using any evidence of conspiracy which formed the basis for the conspiracy count of the original indictment, because he was acquitted on this charge. This motion was based on the doctrine of "collateral estoppel grounds," which Uselton defined as "a ba-

---

* The Honorable Harry W. Wellford assumed senior status January 21, 1991.

** The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation.

1. The government notes in its brief at 2 that the substantive counts were for *attempted* Hobbs Act violations, because the money extorted was supplied by the FBI.

2. Count Two alleges the receipt of money on July 20, 1989, which is overt act 18 of the conspiracy count. Count Three alleges the receipt of money on July 3, 1989, which is overt act 17 of the conspiracy count. Count Four alleges the receipt of money on June 6, 1989, which is overt act 15 of the conspiracy count. Count Five alleges the receipt of money on May 1, 1989, which is overt act 13 of the conspiracy count.

sic and essential part of ... double jeopardy."

The district court concluded that "the elements addressed by the jury [in its acquittal on the conspiracy count] in the first trial are quite different from the elements which will be addressed in the second trial." Accordingly, the court concluded that collateral estoppel was not implicated by retrial. The district court refused to dismiss the indictment or to limit the government's proof relying upon *United States v. Frazier*, 880 F.2d 878 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990). Uselton appeals from that determination.

■ Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Its applicability to criminal prosecutions is well established. *Id.*

> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude *whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.*"

*Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194 (quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harv.L.Rev. 1, 38–39) (1960) (emphasis added).

■ Uselton makes a vigorous effort to demonstrate that collateral estoppel principles bar his retrial. In essence, he argues that the acquittal on the conspiracy count precludes further prosecution for any of the overt acts alleged in that count. A careful analysis of the collateral estoppel test in light of the facts of this case demonstrates that Uselton's retrial was not barred based on collateral estoppel.

■ A criminal defendant seeking to benefit from collateral estoppel has the burden of proving "by clear and convincing evidence that the fact sought to be foreclosed was necessarily determined by the jury against the government in the prior trial." *United States v. Benton*, 852 F.2d 1456, 1466 (6th Cir.) (citing *United States v. Gentile*, 816 F.2d 1157, 1162 (7th Cir. 1987)), *cert. denied*, 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988). "Unless it can be said with definite assurance, and by clear evidence, that the jury found a fact in the defendant's favor, which is also a necessary element of the crime sought to be reprosecuted, *Ashe* will not assist a criminal defendant." *Benton*, 852 F.2d at 1466.

In *United States v. Frazier*, 880 F.2d 878 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990), two defendants were charged with conspiracy to misapply funds of a federally insured bank and to make false entries in bank records, as well as with numerous substantive offenses. The jury acquitted the defendants on 18 counts, including the conspiracy count, but was unable to agree on a verdict on several other counts. In reviewing the applicability of collateral estoppel principles to the remaining counts, this court noted that its "ultimate determination must be whether the 'single rationally conceivable issue in dispute' was the issue on which the jury found for the defendants on each acquitted charge at the first trial." 880 F.2d at 883–84 (quoting *Ashe*, 397 U.S. at 445, 90 S.Ct. at 1195).

We adopted the *Ashe* rule to the facts, and reached a conclusion that applies with equal force in the instant case:

> The acquittal under count 1—the conspiracy count—has no preclusive effect. It is settled that a conspiracy to commit a crime is a distinct offense from the commission of the crime. This is so even if commission of the crime is listed as an overt act in the conspiracy count. *United States v. McCullah*, 745 F.2d 350, 355

(6th Cir.1984). The first essential element of a criminal conspiracy is an agreement to violate the law. The jury's verdict on count 1 could rationally have been based on a finding that the defendants and co-conspirators did not agree to a scheme to misapply the bank's funds and falsify its records. In such a case, following the court's instructions, the jury could have acquitted without ever considering whether Frazier and DeBusk committed the acts charged in the remaining counts, whether listed as overt acts or not. Thus, insofar as count 1 is concerned, the acquittal did not create a situation in which "an issue essential to the prosecution's case in the second trial has necessarily been decided for the defendant[s] in the first trial." *United States v. Bowman,* 609 F.2d 12, 17 (D.C. Cir.1979).

*Frazier,* 880 F.2d at 884. The *Frazier* rationale applies to these facts. For the reasons stated by the district court, and established in *Frazier,* appellant's collateral estoppel argument must fail.

■ Although appellant did not specifically address double jeopardy as distinguished from collateral estoppel in his motion before the district court and in his original brief,[3] in the interest of justice we feel constrained to address this issue in light of appellant's reply brief which calls attention to the recent Supreme Court decision in *Grady v. Corbin,* — U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

We consider therefore appellant's double jeopardy argument which was raised previously in his reply brief. In *Grady,* a defendant who had been involved in a serious auto accident pled guilty in a municipal court to driving while intoxicated and failing to keep to the right of the highway median. State authorities later charged the defendant by indictment with reckless manslaughter, criminally negligent homicide, and third-degree reckless assault after the victim of the defendant's misconduct died. The bill of particulars accompanying the subsequent indictment listed

driving while intoxicated and failure to keep to the right of the median as the acts upon which the prosecution would rely in proving its felony case. *Grady* held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2093.

■ Appellant relies upon *Grady* arguing that his second trial is barred based upon that holding. *Grady* involved a "subsequent" prosecution, after an earlier prosecution had been completed and resulted in a final judgment based upon a guilty plea. Appellant would extend *Grady* to the effect that anytime a jury reaches a verdict on one count but deadlocks on other related counts, the government would then be barred by double jeopardy from retrying the related counts. But, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Richardson v. United States,* 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson,* 468 U.S. at 325, 104 S.Ct. at 3086 (citations omitted).

*Grady* concerned itself with proof of "conduct that constitutes an offense" and whether such conduct is "an essential element of [the] offense charged." 110 S.Ct. at 2093. If a defendant has already been prosecuted for such *conduct,* then *Grady* holds that double jeopardy bars retrial. Again, the "critical inquiry" is upon conduct to be proved, "not the evidence the State will use to prove that conduct." *Id.* Thus, if the government relies upon specific evidence in one trial, the use of that same evidence in a subsequent trial is not necessarily barred depending upon whether or not the evidence is used "to prove the same conduct" that constituted the essence

---

**3.** Uselton, for example, in his original appellate brief at 26, states:

"The starting point for any discussion of the theory of law raised by the defendant, being

*collateral estoppel,* is … *Ashe v. Swenson,* 397 U.S. 436 [90 S.Ct. 1189, 25 L.Ed.2d 469] (1970)." (Emphasis added).

of the offense charged in the first proceeding. *Id.* *Grady* analyzed *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and construed it as having "nothing to do with the *evidence* presented at trial," but rather "solely with the statutory elements of the offenses charged." 110 S.Ct. at 2093 n. 12. The *Grady* majority made it clear it did not "adopt a 'same evidence' or 'actual evidence' test." *Id.*

One must, under *Grady,* look to the "entirety of the conduct" for which Uselton was acquitted in the first trial. *Id.* at 2094. The district court had no opportunity to address nor to consider the *Grady* double jeopardy implications. Judge Edgar is most familiar with the conduct that constituted the offense as proved at the first trial in respect to whether that same conduct was proved as an essential element of the offenses charged in the second trial. We believe it appropriate then to remand the double jeopardy *Grady* issue to the district court for a ruling in light of that recent decision.

We AFFIRM the district court's collateral estoppel ruling, but we REMAND for further consideration and determination by the district court of the double jeopardy raised in light of *Grady v. Corbin, supra.*