**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**James Lee EVANS, Defendant–
Appellant.**

**Nos. 90–6589, 90–6590.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 27, 1991.

Decided Dec. 17, 1991.

Joseph M. Whittle, U.S. Atty. (briefed), Terry Cushing, Asst. U.S. Atty. (argued), Alexander T. Taft, Jr., Asst. U.S. Atty., Louisville, Ky., for U.S.

William H. Allison, Jr. (argued and briefed), Allison, Soreff & Garber, Louisville, Ky., for James Lee Evans.

Before KENNEDY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The defendant relies upon the Double Jeopardy Clause as a ground for reversing his conviction pursuant to a guilty plea for violating the continuing criminal enterprise (CCE) statute, 21 U.S.C. § 848, following an earlier conviction for conspiring to possess with intent to distribute, and distributing cocaine and marijuana, 21 U.S.C. § 846. The government concedes that some of the same evidence introduced in the conspiracy trial would have been relied upon to establish the alleged operation of a continuing criminal enterprise. Resolution of this issue requires us to reconcile the holdings and analyses in two recent Supreme Court decisions. See *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), and *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

The defendant makes two additional arguments for reversal that we find have no merit. He appeals from the district court's denial of his motion to withdraw his guilty plea in the second prosecution, arguing that he had ineffective assistance of counsel and that the district court violated the provisions of Fed.R.Crim.P. 11(c) in accepting the guilty plea. Having carefully considered the record and arguments we find that the defendant was not denied effective assistance of counsel, and that any violation of Rule 11(c) resulted in harmless error. The district court did not abuse its discretion in denying the motion to withdraw the guilty plea. *United States v. Goldberg*, 862 F.2d 101 (6th Cir.1988); *United States v. Spencer*, 836 F.2d 236 (6th Cir.1987).

I.

A.

Both indictments upon which the double jeopardy clause argument is based were returned in the Western District of Kentucky. The defendant Evans was first prosecuted in 1986 in a case styled *United States v. Pardomo*. The *Pardomo* prosecution involved multiple defendants and multiple allegations concerning a drug conspiracy. Evans was charged with two counts of conspiracy and three substantive counts of possession with intent to distribute and distribution of marijuana and cocaine. Specifically, Evans was indicted for engaging in a "conspiracy to unlawfully possess with the intent to distribute and distribution of marijuana and cocaine in violation of 21 U.S.C. § 846 between January 1, 1978 through October 7, 1985." The second conspiracy count against Evans charged him with conspiring to import marijuana into the United States from Jamaica and Belize during the same time period. A jury convicted Evans on both conspiracy counts and one of the possession charges.

The conspiracy that the prosecution presented to the jury in the *Pardomo* trial was headed by Randall Garrett. Evans was involved in the Garrett conspiracy in a number of ways, but primarily as a financier. In 1983, Evans loaned Garrett $12,000 to return to the United States when Garrett's plane crashed in Jamaica. In 1984, Evans and Garrett made arrangements for Garrett to purchase an airplane, ostensibly to import marijuana from Central America. Evans also provided Garrett the funds needed to import a load of marijuana from Belize in 1984.

The government's case in the *Pardomo* prosecution stemmed in large part from the testimony of Garrett himself. In describing his relationship with Evans, Garrett admitted he began his personal involvement in the drug trade by driving cars for Evans in the late 1970s. Later, however, Garrett started his own organization to buy and sell marijuana, though concededly Evans introduced Garrett to his initial drug sources. Additionally, Garrett testified that he repaid the debts he owed Evans by sending Evans a portion of the drug shipments. In fact, Garrett acknowledged he was still repaying the 1984 loan from Evans to buy the airplane at the time he was arrested. Garrett testified he would give a percentage of each shipment of drugs he imported to Evans, in order to reduce his indebtedness.

About a week before the *Pardomo* trial began, Evans was indicted for engaging in a continuing criminal enterprise as defined in 21 U.S.C. § 848. The CCE indictment charged that Evans promoted criminal activity from January 1, 1979 to September 6, 1986. The locations involved in the indictment were the Kentucky counties of Jefferson, Spencer, Bullitt, and Shelby, the states of Kentucky, Texas, Florida, and Indiana, and the countries of Columbia, Mexico, Belize, and Jamaica.

Following his conviction in the *Pardomo* trial, Evans moved to dismiss the CCE indictment on the ground that the second prosecution constituted double jeopardy. This motion was denied by the district court and, in an interlocutory appeal, this court affirmed. Both courts found that there were two separate conspiracies; that Evans had been prosecuted in the *Pardomo* trial for his involvement in the Garrett conspiracy, but was being prosecuted in the CCE indictment for orchestrating his own conspiracy to import and distribute narcotics.

District Judge Simpson was not concerned that the time frames of the two conspiracies overlapped given the long duration of each. He also found "significant differences between the two in the area of sources of supply." Additionally, the Evans conspiracy involved the importation of both marijuana and cocaine, while the Garrett organization imported only marijuana. Finally, Judge Simpson stressed that the Evans conspiracy encompassed a greater geographic area than did the Garrett conspiracy. The court accepted that the two conspiracies interacted at times, but found that they never merged into a single entity. Evans did loan money to the Garrett enterprise on several occasions, and Garrett did repay these debts in the form of marijuana at 100% interest. The DEA agent who testified before the district court acknowledged that up to twelve coconspirators worked within both the Garrett and the Evans organizations. Nevertheless, the district court found the government to have met its burden of proof on the question of whether one or two conspiracies existed, and this court affirmed, concluding that the district court's finding that "the original conspiracy conviction and the acts underlying the current continuing criminal enterprise prosecution did not stem from a single agreement" not clearly erroneous.

### B.

Following this court's remand, the defendant made a motion before Judge Simpson to consolidate the CCE action with yet another criminal action against him then pending before Senior District Judge Allen. The motion was made for the specific purposes of entering a guilty plea and sentencing. Following transfer of the CCE case to Judge Allen, Evans appeared with retained counsel, withdrew his earlier not guilty plea, and tendered a guilty plea to the CCE

indictment and to certain counts in the consolidated case. Judge Allen accepted the defendant's guilty plea to all counts in the CCE indictment and some of the counts in the indictment with which it had been consolidated. Other counts were dismissed.

Before sentencing, Evans filed a motion for withdrawal of his guilty plea pursuant to Fed.R.Crim.P. 32(d), arguing that the plea was not voluntarily and intelligently entered because he was denied effective assistance of counsel. Judge Allen conducted a two-and-one-half day evidentiary hearing and filed a written opinion in which he discussed each contention made by the defendant and analyzed all of them in the light of controlling legal principles. While conceding that he had not followed Rule 11(c) precisely in accepting the guilty plea, Judge Allen pointed out that Evans had recently been through a lengthy criminal trial in which he was found guilty, and had been sentenced by Judge Simpson. Therefore, Judge Allen concluded that Evans was aware of any constitutional rights that had not been specifically detailed at the plea session. Moreover, Evans had requested that the CCE case be consolidated for the specific purpose of pleading guilty. He had made this motion with advice of retained counsel and with knowledge of the scope of the government's case against him. Judge Allen then applied the harmless error provision of Rule 11(h) and denied the motion. See *United States v. Stead,* 746 F.2d 355 (6th Cir.1984). Judge Allen also denied the defendant's renewed motion to dismiss on double jeopardy grounds. Following sentencing Evans filed this appeal with appointed counsel who represented him in all proceedings related to the motion for withdrawal of the guilty plea.

## II.

■ On appeal the defendant argues that in *Grady v. Corbin* the Supreme Court changed the rule for application of double jeopardy principles in cases of successive prosecutions in such a way as to prohibit his CCE prosecution despite the earlier binding determination that the later prosecution involved a different drug conspiracy from the one for which he was convicted in *Pardomo.* *Grady* added a second inquiry to the traditional one required by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in determining whether a defendant has been put twice in jeopardy by successive prosecutions. We agree with those courts which have held that *Grady* did not disturb the holding in *Garrett v. United States* that a CCE prosecution does not automatically expose a defendant to double jeopardy because it is based, in part, on evidence previously used to establish a predicate offense that also must be proven to make out a CCE violation.

### A.

In *Blockburger* the government obtained convictions in one prosecution under two separate statutes on the basis of a single criminal act or transaction. The Supreme Court stated that in order to determine in such a situation whether there are two offenses or one, the test is "whether each [statutory] provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. In later decisions the Supreme Court stated that the *Blockburger* rule does not create a conclusive presumption of law, but is a rule of statutory construction that requires a factual inquiry into the intent of the legislature in enacting the several statutes. See, *e.g., Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, where a legislature "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end" and the double jeopardy provision of the Fifth Amendment does not prohibit cumulative punishment under both statutes in a single trial. *Id.* at 368–69, 103 S.Ct. at 679.

Later cases made it clear that *Blockburger* does not provide the exclusive test for determining double jeopardy, particularly in cases involving successive prosecutions. The Supreme Court discussed the application of double jeopardy principles in successive prosecutions for different offenses

arising out of a single act or transaction in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Following an automobile accident in which two people were killed, the defendant driver of one car was convicted for failing to reduce his speed to avoid an accident. Later, based on the same accident, he was charged with involuntary manslaughter. The Court first held that application of the *Blockburger* test did not rule out a second prosecution. The Court went on to state in dictum, however, that if it would be necessary to rely on the defendant's failure to slow his vehicle in order to make out the manslaughter case, "because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial...." *Id.* at 420, 100 S.Ct. at 2267. The case was remanded to the Illinois Supreme Court to determine the evidentiary relationship between the charges.

Like *Vitale, Grady* involved successive prosecutions for several offenses based on a single act or transaction. Once again a driver involved in a fatal automobile accident was first charged with a relatively minor traffic offense and later, when the driver of one of the other vehicles died, with vehicular homicide and assault. The *Grady* Court decided the issue that it had discussed in *Vitale,* holding that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2087.

The Court then described a two-step analysis of double jeopardy claims. In deciding a double jeopardy claim a court must first apply the traditional *Blockburger* test. *Id.* 110 S.Ct. at 2090. In the case of successive prosecutions, however, there is a second hurdle, even if the *Blockburger* test is satisfied. Following its "suggestion" in *Vitale,* the Court directed that in such a case it must be determined whether "the government, to establish an essential element of an offense charged in [the subse-

quent prosecution], will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* 110 S.Ct. at 2093.

■ The Court denied that it was creating an "actual evidence" or "same evidence" test. Rather, it stated, "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.* Neither *Blockburger* nor other double jeopardy cases imposed a "same evidence" test; the determining factor is "the statutory elements of the offenses charged." *Id.* 110 S.Ct. at 2093 n. 12.

### B.

The cases cited and most relied upon by the majority in *Grady*—e.g., *Blockburger, Vitale, Missouri v. Hunter, Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)—involved a government's attempts to obtain two or more convictions either in a single prosecution or in successive prosecutions on the basis of a single act or transaction. *Garrett,* on the other hand, involved separate prosecutions based on interrelated, but separate acts or transactions that were alleged to constitute separate offenses.

The facts in *Garrett* were fundamentally different from those in such "single incident" cases. In March 1981, Garrett (not the same Garrett as in the *Pardomo* trial) pled guilty in the Western District of Washington to one count of importation of marijuana. Two other substantive counts against Garrett were dismissed without prejudice. *Garrett,* 471 U.S. at 775–776, 105 S.Ct. at 2409–10. Two months later, Garrett was indicted in the Northern District of Florida for conspiring to import marijuana, conspiring to possess marijuana with intent to distribute, using a telephone to facilitate drug activities, and engaging in a continuing criminal enterprise. *Id.* at 776, 105 S.Ct. at 2410. In the trial that followed, the prosecution introduced evidence of Garrett's widespread drug activity, including the conduct in Washington that led to the first indictment. *Id.* In the

jury instructions presented at the close of the evidence, the court told the jury that the Washington evidence could be used to satisfy the predicate act requirements of a continuing criminal enterprise. *Id.* at 776–777, 105 S.Ct. at 2410.

The jury convicted Garrett on the CCE count, the conspiracy counts, and the telephone facilitation count. *Id.* at 777, 105 S.Ct. at 2410. The Eleventh Circuit affirmed the conviction despite Garrett's contention that the Florida CCE prosecution violated his double jeopardy rights. *Id.* The Supreme Court affirmed, holding that a prosecution for engaging in a continuing criminal enterprise was not barred under the Double Jeopardy Clause simply because it relied upon three predicate acts for which defendant Garrett had previously been prosecuted.

### III.

Several courts of appeals have considered the applicability of *Grady* to cases involving successive prosecutions where multiple acts or transactions are charged.

In *United States v. Calderone*, 917 F.2d 717 (2d Cir.1990), a divided panel held that *Grady* is not limited to single-transaction cases, but requires application of the "same conduct" test "to all double jeopardy claims arising in the context of successive prosecutions." *Id.* 917 F.2d at 721. *Calderone* involved two drug conspiracies. The defendant Calderone had been acquitted at trial on a 1988 indictment charging a large multidrug conspiracy, and subsequently was indicted for participation in a smaller drug conspiracy confined to distribution of heroin in New York.

In upholding the appellant's double jeopardy defense, the majority opinion by Judge Pratt rejected the government's contention that the essential unlawful conduct in a conspiracy case is the agreement to band together for the purpose of committing a crime rather than the ultimate act or acts in furtherance of the agreement. He wrote that in conspiracy cases, the agreement " 'is all but synonymous' with the offense itself." *Id.*, citing *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102

L.Ed.2d 927 (1989). The fact that the two indictments against Calderone charged different agreements was immaterial; the government relied upon proof of the same conduct to establish both agreements, and that reliance was fatal under *Grady*.

Judge Newman concurred in a separate opinion in which he agreed with the majority's application of *Grady* to the situation presented in *Calderone*. He expressed concern, however, that the "same conduct" rule of *Grady* might be applied too broadly to prohibit successive prosecutions that did not actually fit the *Grady* model. He discussed Justice Brennan's use of the term "element" and the phrase "conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* Judge Newman concluded that a second prosecution should be barred under *Grady* "only when the conduct previously prosecuted is to be used 'to establish' the element of the second crime, which I think must mean 'constitute the entirety of' the element." *Id.* 917 F.2d at 724. What occurred in *Calderone* was that the government, in effect, merely carved out a portion of the case used to support the broad, wide-ranging conspiracy on which the defendant was acquitted and attempted to use evidence of the same conduct to establish "the entirety of an element of the" second offense. *Id.* at 726.

Judge Miner dissented in *Calderone*, arguing that the defendants had not "already been prosecuted" for the conduct charged in the second indictment. *Id.* at 727. Judge Miner would distinguish between "items of evidence" and "evidence of conduct constituting any offense for which [a defendant has] already been prosecuted." *Id.* He pointed out that no overt acts need be alleged or proved under the drug conspiracy statute, 21 U.S.C. § 846, and thus the agreement is the "gist" of such a conspiracy. He would treat the "element" language of *Grady* as requiring the overlapping overt acts to be an "essential element" of the conspiracy charged in the second indictment. *Id.* 917 F.2d at 728. Judge Miner reasoned that there were "two entirely different conspiracies, and,

while evidence that tends to prove the existence of one may also tend to prove the existence of the other, *Grady* affords no double jeopardy protection under such circumstances." *Id.*

In *United States v. Felix*, 926 F.2d 1522 (10th Cir.1991) *cert. granted,* — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991), the court adopted the same approach as the *Calderone* court in applying *Grady* to successive prosecutions. The court rejected the government's argument that the agreement charged in a second indictment for conspiracy was different conduct than an unlawful act previously prosecuted as a substantive offense and relied upon as evidence of the conspiracy. In addition to finding an overlap in evidence of conduct relied upon to establish the charged offenses in the two indictments, the court noted that "the two offenses did not involve distinct persons, places, or times." *Id.* 926 F.2d at 1530.

Judge Anderson dissented in *Felix*, arguing that the majority overlooked the "essential element of the offense" language in *Grady* and applied a simple "same conduct" rule. *Id.* 926 F.2d at 1532.

In *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.1990), the court concluded that "the reasoning of [*Grady*] logically extends only to offenses arising from a single discrete event" and does not foreclose "successive prosecutions in cases of compound-complex felonies such as RICO, which involve several criminal acts occurring at different times in different places." *Id.* 910 F.2d at 1109. While acknowledging the broad "same conduct" language in *Grady*, the court noted that Justice Brennan reached the double jeopardy conclusion largely in reliance on earlier cases that involved "discrete criminal events." *Id.* 910 F.2d at 1110. The court found the double jeopardy problem posed by successive prosecutions in "compound-complex cases" to be "more closely analogous" to the problem dealt with in *Garrett. Id.*

The defendant in *Pungitore* was first convicted of extortion. He was then charged with a pattern of criminal activity under RICO. Some of the evidence of conduct necessary to sustain the extortion conviction was also utilized to satisfy one of the predicate act requirements of RICO. The court found that reliance on evidence of this same conduct in the second trial was not controlling. The court compared the *Pungitore* defendant's RICO offense to the CCE offense in *Garrett*. As in *Garrett*, the *Pungitore* defendant's RICO offense was far more extensive than the predicate act of extortion, and his racketeering activity continued after his indictment for the extortion.

The Court of Appeals for the Third Circuit again found *Garrett* rather than *Grady* controlling in *United States v. Esposito*, 912 F.2d 60 (3d Cir.1990). There, the defendant had been acquitted in 1988 on all counts in an indictment charging him with conspiracy to violate RICO and participation in a continuing criminal enterprise, specifically charging him with four predicate acts. Following acquittal, Esposito was indicted on three counts of drug distribution. The government conceded that these counts were based on the transactions that supported predicate acts charged in the earlier indictment. Denying the defendant's double jeopardy claim, the court held that the conduct required to support a RICO charge "constitutes an offense different than and separate from that encompassed by the narcotics charges alleged here, even if they were predicate acts or evidence used to prove the racketeering." *Id.* at 65.

In another case involving a subsequent prosecution for RICO violations following conviction for drug offenses constituting predicate acts relied upon in the RICO prosecution, the court in *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991), found the reasoning of *Garrett* dispositive. The court concluded that *Grady's* "conduct" holding applies only in cases involving "single act crimes," while *Garrett* "clearly allows for subsequent prosecutions for complex crimes such as" RICO violations. *Id.* at 921 F.2d 1537–38. The court distinguished "the dicta underlying *Calderone's* application of *Grady* to successive conspiracy indictments," and specif-

ically followed *Pungitore* and *Esposito.* *Id.* 921 F.2d at 1539.

Applying *Grady*'s "essential element of an offense charged" test, the court in *United States v. Rivera–Feliciano,* 930 F.2d 951 (1st Cir.1991), held that double jeopardy would not result from the prosecution of a charge of conspiracy to possess drugs with intent to distribute and possession with intent to distribute following conviction on a distribution charge. The government conceded that a quantity of heroin confiscated by agents prior to the first indictment had formed the basis of both indictments. The court held that the evidence used to prove conduct constituting distribution of the drugs was independent of conduct establishing the conspiracy to possess with intent to distribute the same drugs. "Clearly, the essence of the conspiracy is the agreement, and conviction for the conspiracy does not prevent conviction, or acquittal, for the substantive charge comprising the conspiracy." *Id.* at 954–55.

Two additional cases from other circuits deserve mention. In *United States v. Clark,* 928 F.2d 639 (4th Cir.1991), the facts were similar to those in *Rivera–Feliciano.* The defendant was first convicted of possessing heroin, with intent to distribute under 21 U.S.C. § 841(a)(1), and subsequently was indicted with others for conspiracy to distribute heroin and to possess it for the purpose of distribution under 21 U.S.C. § 846. The conduct for which he was first convicted was listed as an overt act in the conspiracy indictment. The court considered the "essential element" language of *Grady* and concluded that the second prosecution did not expose the defendant to double jeopardy. The only essential elements of an offense under § 846 are (1) "an agreement" with others "to undertake conduct that would violate ... laws ... relating to controlled substances and (2) the defendant's willful joinder in that agreement." *Id.* 928 F.2d at 641–42. There is no requirement that overt acts be proven. Referring to Judge Newman's treatment of *Grady* in *Calderone,* the court found that evidence of the earlier possession of drugs, the sole basis of the

first prosecution, did not constitute "the entirety" of any element of the conspiracy offense. *Id.* 928 F.2d at 642.

While continuing to adhere to its holding in *Calderone* that *Grady* applies to multiple conspiracy cases as well as "single transaction" cases, the Court of Appeals for the Second Circuit held in *United States v. Gambino,* 920 F.2d 1108 (2d Cir. 1990), that *Garrett's* underlying principles survived *Grady.* Applying *Garrett,* the court ruled that CCE and RICO charges could be pressed in a subsequent prosecution, because some of the conduct constituting predicate acts required for CCE and RICO convictions occurred after the initial prosecution. *Id.* 920 F.2d at 1112–13.

## IV.

*Grady* did not overrule *Garrett;* in fact, it cited *Garrett* with apparent approval. 110 S.Ct. at 2094 n. 15. Justice Brennan wrote the majority opinion in *Grady,* but did not refer to the dissenting opinion in *Garrett,* in which he had joined, as providing a rationale for the *Grady* result. None of the cases reviewed herein involved precisely the situation we have in the present case, where a conspiracy conviction was followed by a CCE prosecution. We believe, nevertheless, that principles enunciated in *Garrett* and other decisions, including several post-*Grady* decisions of this court, provide a proper rationale for our rejection of Evans's arguments.

We considered the effect of *Grady* on double jeopardy jurisprudence in *United States v. Uselton,* 927 F.2d 905 (6th Cir. 1991). Uselton was indicted on charges of conspiracy to violate the Hobbs Act and four substantive counts of Hobbs Act violations. The jury acquitted Uselton of the conspiracy count, but it "hung" on the four substantive counts. In a superseding indictment, the four original substantive counts were listed along with six additional Hobbs Act charges. Each of the latter counts corresponded to an overt act identified in the conspiracy count of the original

indictment. Because the district court had not had an opportunity to consider the defendant's double jeopardy argument in the light of *Grady*, decided during the pendency of the appeal, we remanded for such consideration.

While remanding, however, we set out our view of *Grady*'s impact. We concluded that even "if the government relies upon specific evidence in one trial, the use of that same evidence in a subsequent trial is not necessarily barred depending upon whether or not the evidence is used 'to prove the same conduct' *that constituted the essence of the offense charged in the first proceeding.*" *Id.* 927 F.2d at 908–09 (emphasis added). It is the "statutory elements of the offenses charged," not the evidence presented at trial, that determines the double jeopardy issue. *Id.* at 909 (quoting *Grady*, 110 S.Ct. at 2093 n. 12).

In *United States v. Easley*, 942 F.2d 405 (6th Cir.1991), we noted that before *Grady* was decided this court had held that in considering a double jeopardy defense to a successive prosecution we must go beyond *Blockburger* "and look to the *legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted* without examining the facts in detail." *Id.* 942 F.2d at 408 (quoting *Pandelli v. United States*, 635 F.2d 533, 538 (6th Cir.1980) (italics in text). We then held that the agreement was the essential element of the conspiracy charged in the second indictment and that no agreement was required to support convictions of two substantive charges in earlier prosecutions. Even though the same evidence would be used to prove the conspiracy charge as had been used to obtain the previous convictions, there would be no double jeopardy violation. The conduct that supported the substantive charges would not prove the essential element of the conspiracy charge—an agreement to violate federal obscenity statutes. The court quoted Judge Newman's statement in his *Calderone* concurrence, "that *Grady* does not go so far as to preclude proof of conduct that was only evidence of an element of the prior offense." *Id.* 942 F.2d at 410, quoting 917 F.2d at 724. Because proof of the conduct underlying the early convictions would not constitute *the entirety* of an element of the offense at the second trial, double jeopardy principles do not prohibit the second prosecution.

## V.

■ Evans contends that he is not arguing for a "same evidence" rule, but grounds his double jeopardy claim on the fact that the government would have relied upon the same conduct for which he was convicted in *Pardomo* in prosecuting him on the CCE charge. This argument misreads *Grady*. The Supreme Court did not hold that no conduct shown by the evidence in the earlier trial may be used to sustain the charges in the later trial. What is forbidden is the establishment of essential elements of the offense charged in the later prosecution by evidence of the conduct *for which the defendant was convicted* in the earlier prosecution. *Grady* 110 S.Ct. at 2094. It is not the same conduct, per se, that may not be used, but the particular unlawful conduct that was the basis of the first conviction.

The present case more nearly resembles *Garrett* than *Grady*. The two *Garrett* prosecutions grew out of activity that occurred over a period of several years and encompassed numerous separate criminal transactions. The same is true of the two *Evans* prosecutions. *Grady*, on the other hand, was a single transaction case that resulted in two attempted prosecutions. While some of the same conduct was disclosed by the evidence in both first and second *Garrett* and *Evans* prosecutions, in *Grady* the *only* conduct to be shown by the evidence as a basis for sustaining the second charge was the very same conduct upon which the first conviction was based.

## CONCLUSION

The Supreme Court stated in *Garrett* that Congress clearly intended to create a separate offense in enacting CCE, "punishable in addition to, and not as a substitute for, the predicate offenses." 471 U.S. at 779, 784–86, 105 S.Ct. at 2411, 2414–15.

Thus, there is no *Blockburger* problem when one previously convicted for an offense with different elements is charged with a CCE violation. The Court also "cautioned against ready transposition" of double jeopardy principles founded on a single course of conduct to the "multilayered conduct, both as to time and to place," like that comprising the wide-ranging criminal activity charged in the CCE case against Garrett. *Id.* at 789, 105 S.Ct. at 2416–17.

■ Our second-step analysis under *Grady* leads to the conclusion that the CCE prosecution did not expose Evans to double jeopardy. The essence of a conspiracy charge is an agreement. *United States v. Easley,* 942 F.2d at 410. The conspiracy for which Evans was convicted in 1986 was charged under 21 U.S.C. § 846. Unlike 18 U.S.C. § 371, the general conspiracy statute, section 846 does not require either allegation or proof of overt acts; the agreement willfully joined is the entire offense. The district court found, and this court affirmed, that the conspiracy for which Evans was convicted in *Pardomo* and the conspiracy charged in the CCE indictment were not the same. Therefore, each conspiracy was based upon a separate agreement. As Judge Miner stated in his *Calderone* dissent, where two entirely different conspiracies are charged, even though evidence that tends to prove the existence of one may also tend to prove the existence of the other, *Grady* affords no double jeopardy protection under such circumstances. 917 F.2d at 728.

Unlike the section 846 conspiracy for which Evans was convicted, the CCE charge required proof of substantive crimes, or predicate acts. To prove these predicate acts, the government proposed to introduce evidence of conduct that was used in the earlier prosecution. The fact that the same evidence would be used did not create a double jeopardy problem. Because the agreement was the essential element of the offense for which Evans was previously convicted, the conduct to be proved by the same evidence in the subsequent prosecution is not "conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady,* 110 S.Ct. at 2093; *Easley,* 942 F.2d at 410. As Judge Anderson wrote, dissenting in *Felix:*

> But the *Grady* rule does not bar subsequent proof of *all* conduct introduced into evidence in a previous trial. *Grady* only bars the prosecution in a subsequent trial from proving "conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin,* 110 S.Ct. at 2093.

926 F.2d at 1533 (italics in text).

The judgment of the district court is affirmed.

DAVID A. NELSON, Circuit Judge, concurring.

As Judge Lively's opinion intimates, the significance of *Grady* may ultimately prove to be limited to single transaction situations, as opposed to situations where, as in *Garrett* and *Calderone,* criminal activity involving numerous separate transactions was continued over a long period of time. Even if *Grady* turns out to have the broader significance attributed to it by the majority in *Calderone,* however, I am not persuaded that our original disposition of the double jeopardy claim in the instant case was erroneous.

The defendants in *Calderone* were prosecuted initially for participation in a large conspiracy that involved the distribution of heroin, cocaine and marijuana over a period of 42 months. After the "big conspiracy" case was concluded, the defendants were prosecuted for participation in a "small conspiracy" that involved the distribution of heroin alone over a 15–month period within the same time frame. The small conspiracy appears to have been part and parcel of the big one; as Judge Newman explained in his concurring opinion,

> "the conduct alleged to show the existence of the big conspiracy ... would suffice to establish the element of the smaller conspiracy.... Evidence that defendants have agreed to sell heroin and other drugs over a long period of time will surely establish the element of an agreement to sell only heroin during

an interval within that longer period."
*Calderone*, 917 F.2d at 726.

■ In the case at bar, by contrast, we are not dealing with a small conspiracy that was part of a larger one. Here it has long since been established that there were two independent conspiracies. One was headed by defendant Evans, and the other was headed by Randall Garrett; one focused on the importation of cocaine, and the other involved the importation of marijuana; and although there was an overlap of personnel, a majority of the people involved with Mr. Evans apparently were not involved with Mr. Garrett. There was also evidence that Evans played no supervisory or organizational role in the illegal activities directed by Garrett; that Garrett exercised no control over the people involved in the activities directed by Evans; and that for the most part, at least, as the district court found, "the sources of supply as between the two conspiracies were not similar." See *United States v. Evans*, 865 F.2d 261 (6th Cir.1988). On these facts, I do not believe that *Grady*, even when viewed through the lens of *Calderone*, requires us to accept the double jeopardy claim that we rejected the last time this case was before us.